HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
PEDRO CASTILLO (Bar No. 159153)
Deputy Federal Public Defender
(E-Mail:  Pedro_Castillo@fd.org)
321 East Second Street,
Los Angeles, California 90012-4202
Telephone No.:  (213) 894-2854
Fax No.:  (213) 894-0081

Attorneys for Defendant
ARLAN WESLEY HARRELL

UNITED STATES DISTRICT COCURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>ARLAN WESLEY HARRELL.<br><br>             Defendant. | No. CR 17-404-AB-1<br><br>**NOTICE OF MOTION; MOTION TO SUPPRESS STATEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION; EXHIBITS**<br><br>Date: October 11, 2019<br>Time: 1:30 p.m. |

**TO PLAINTIFF, UNITED STATES OF AMERICA THROUGH ITS ATTORNEYS, UNITED STATES ATTORNEY NICOLA T. HANNA AND ASSISTANT UNITED STATES ATTORNEY DEVON MYERS AND TRIAL ATTORNEY LAUREN S. KUPERSMITH:**

On  October 11, 2019 at 1:30 p.m., in the courtroom of the Honorable André Birotté, United States District Judge, Defendant Arlan Wesley Harrell will move under Federal Rule of Criminal Procedure 12(b)(3), for an order suppressing all statements obtained by law enforcement in violation of *Miranda v. United States*, 384 U.S. 436 (1966) and the Fifth Amendment to the United States Constitution.

1    This motion is based on the attached memorandum of points and authorities,

2  declaration, exhibits, and the evidence offered at the hearing of this motion.

3

4                                    Respectfully submitted,

5                                    HILARY POTASHNER
                                     Federal Public Defender
6

7  DATED: August 9, 2019          By  /s/ Pedro V. Castillo
                                     _____
8                                    PEDRO V. CASTILLO
                                     Deputy Federal Public Defender
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### INTRODUCTION[1]

Arlan Wesley Harrell is charged in a first superseding indictment with engaging in a child exploitation enterprise, production of child pornography, obtaining custody of a minor for purposes of engaging in sexually explicit conduct, and sex trafficking of a child.  Mr. Harrell is charged along with three other defendants, John Richard Brinson Jr., Moises Martinez, and Keith Allen Lawniczak.

On the predawn hours of Sunday, May 28, 2017, Mr. Harrell was arrested at his family home in Hawthorne, California.[2]  Homeland Security Investigation (HSI) agents, armed with weapons, descended on the residence and detained Mr. Harrell. Agents Diane Asato and Gregory Squire questioned Mr. Harrell at his residence.[3]  (*See* Exhibit A at 0:03 to 0:25) After reading him his *Miranda* rights and upon being asked if he understood these rights, Mr. Harrell stated "I think I understand."[4]  (Exhibit A at 3:16 to 3:59) Agents pressed on, telling him that others suspected of producing child pornography had "sat in front of" the agents.  They told him that he was a "grown man" when he asked if his parents (who were in the house at the time of the search warrant and arrest) would find out. (Exhibit A at 6:25 to 6:45) They told him that his "honesty is going to go a long way."  (Exhibit A at 6:45 to 6:55)  They asked him specific

---

[1] The facts as set forth in this introduction are derived from all of the files and records in this case, including the criminal complaint and indictment, discovery provided by the Government, attached exhibits and declarations, and any other evidence presented at the hearing on this motion.

[2] The search and arrest warrants against Mr. Harrell were obtained on May 27, 2017.

[3] An audio recording of this interrogation is attached as Exhibit A.  Because the recording is subject to the Protective Order, the audio recording will be filed separately Under Seal.  The references in parenthesis in this pleading refer to the time on the audio recording.

[4] A transcript of the audio recording is attached as Exhibit B.  The transcript will also be filed separately Under Seal.  The references to Exhibit B are at the page number noted.

2

questions about the website which they were investigating.  They asked him if he knew any other users of the website.  Mr. Harrell told the agents "I want go get a lawyer." He asked for a lawyer repeatedly.  (Exhibit A at 8:00 to 8:13)  Mr. Harrell tells the agents that he is scared.  (Exhibit A at 8:37 to 8:45)  The agents continue with the interrogation, ignoring his requests.  Despite his repeated requests for a lawyer, the agents obtained incriminating statements from Mr. Harrell. Based on the agents violation of his *Miranda* rights, and because Mr. Harrell did not knowingly waive his rights, and because any statements which he made to the agents that day were not voluntary, these statements should be suppressed

## II.

## ARGUMENT

### A.    MR. HARRELL DID NOT KNOWINGLY AND INTELLIGENTLY WAIVE HIS *MIRANDA* RIGHTS.

To guarantee the Fifth Amendment's right against self-incrimination, an individual taken into custody by law enforcement officers for questioning "must be adequately and effectively apprised of his rights."  *Miranda v. United States*, 384 U.S. 436, 467 (1966); U.S. Const. amend. V.  First, officers must inform the suspect in "clear and unequivocal terms" of his right to remain silent.  *Id.* at 467–68.  Second, they must make the suspect "aware not only of the privilege, but also of the consequences of forgoing it," by informing the suspect that "anything" he says during questioning "can and will be used against [him] in court."  *Id.* at 469.  This warning must be provided so that the suspect knows "that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest."  *Id.*  Third, they must inform the individual of his "right to have counsel present" before and during questioning, so that "the individual's right to choose between silence and speech remains unfettered."  *Id.*  Fourth, and finally, so that the right to counsel is not

3

"hollow," the suspect must be informed that, if he does not have the funds to afford an attorney, one will be appointed for him.  *Id.* at 473.

These four warnings are "an absolute prerequisite" to interrogation and provide the "[o]nly . . . ascertainable assurance" that the suspect is aware of his rights.  *Id.* at 471; *see United States v. Reyes-Bonilla*, 671 F.3d 1036, 1044 (9th Cir.), *cert. denied*, 568 U.S. 905 (2012) ("A waiver of rights cannot be found to have been considered or intelligent where there is no evidence that the detainee was first advised of those rights in a language he could understand.").  It is thus irrelevant whether, absent express warnings or their fully effective equivalent, a suspect actually understood his rights. *Miranda*, 384 U.S. at 471, 479 (stating "circumstantial evidence" of a suspect's awareness of his rights to be insufficient); *United States v. Botello-Rosales*, 28 F.3d 865, 867 n.2 (9th Cir. 2013) (holding "irrelevant" whether suspect understood his rights when warnings were deficient); *United States v. Longbehn*, 850 F.2d 450, 453 (8th Cir.1988) (rejecting the argument that the suspect's position as a police officer obviates the requirement of a *Miranda* warning).  Furthermore, after these warnings are issued, the government cannot seek to admit custodial statements unless the government proves by a preponderance of the evidence that the suspect voluntarily, knowingly, and intelligently waived his *Miranda* rights.  Failure to prove that the warnings were issued or that a defendant validly waived his rights requires that custodial statements be suppressed.  *Miranda*, 384 U.S. at 479.

**B.    MR. HARRELL'S STATEMENTS WERE MADE IN VIOLATION OF *MIRANDA* BECAUSE HE REPEATEDLY ASKED FOR A LAWYER.**

### 1.    Mr. Harrell was in custody when agents interrogated him.

To begin with for *Miranda* to apply, a person must be in "custody."  A person is in "custody" when he is deprived of "freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam); *Stansbury v. California*, 511 U.S. 318, 322 (1994) (defining custody as a

"formal arrest or restraint on freedom of movement of the degree associated with a formal arrest"). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation." *Stansbury*, 511 U.S. at 322; *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (court must examine the "totality of circumstances surrounding the interrogation"). The test is whether "a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).

The Ninth Circuit has identified five common but non-exhaustive factors to determine whether a person is in custody:

   1. "the language used to summon the individual;
   2. the extent to which the defendant is confronted with evidence of guilt;
   3. the physical surroundings of the interrogation;
   4. the duration of the detention; and
   5. the degree of pressure applied to detain the individual."

*United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (citing *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)). "Other factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *Kim*, 292 F.3d at 974; *see United States v. Brobst*, 558 F.3d 982, 995–97 (9th Cir. 2009).

All factors here show that Mr. Harrell was in custody. A team of agents arrived at his home in the early morning hours before sunrise. They were armed. They were there for the purpose of executing a search and arrest warrant which had been filed against him. At 5:33 a.m., special agents Diane Asato and Greg Squire of the Department of Homeland Security Investigations (HSI) began to question Mr. Harrell. At the time of the questioning, Mr. Harrell was detained, and effectively, under arrest. His father and mother, who were also at the house, were also questioned. Mr. Harrell

5

was separated from his parents and was not permitted to speak with them during the interrogation. Thus, there is no question that Mr. Harrell was in custody at the time of his interrogation by the agents. The questioning lasted for almost forty-two minutes. During the questioning, agents asked Mr. Harrell questions designed to elicit incriminating responses, confronted him with evidence of guilt, and obtained incriminating statements from him.

### 2. Mr. Harrell did not knowingly or voluntarily waive his *Miranda* rights.

To be admissible, custodial statements must be obtained only after a defendant has waived his *Miranda* rights. The government bears the "heavy" burden to prove that a defendant understood and waived his rights, not that he "probably" understood them or "probably" waived them. *United States v. Garibay*, 143 F.3d 534, 536–37 (9th Cir. 1998); *Miranda*, 384 U.S. at 475 ("heavy burden"). To be valid, a waiver must be "made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. The inquiry thus has two distinct inquiries: (1) first, the waiver must be knowing and intelligent—that is, it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it; and (2) second, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In making this determination, a court must indulge "every reasonable presumption against waiver." *Garibay*, 143 F.3d at 536–37.

Here, after the *Miranda* advisement, Agent Squire says "So, do you understand? Do you want to read these rights?" Mr. Harrell response is: "I think I understand." (See Exhibit B at page 2) There is no further explanation of the rights by the agents, nor do they follow up with what Mr. Harrell means when he says that he *thinks* he understands. He later tells the agents, after repeatedly saying that he wants a lawyer,

6

1   "I'm scared right now." Under these circumstances, it cannot be said that Mr. Harrell

2   knowingly waived his *Miranda* rights.

3       **3.    Mr. Harrell Requested a Lawyer Numerous Times During**

4           ***Miranda*, which Request was Ignored by the Agents.**

5           Under *Miranda* and its progeny, not only must an accused person be informed of

6   his rights prior to custodial interrogation, "[i]f a suspect 'indicates in any manner and at

7   any stage of the process that he wishes to consult with an attorney,' all questioning

8   must cease." *Sessoms v. Grounds*, 776 F.3d 615, 622 (9th Cir. 2015) (*en banc*) (*quoting*

9   *Miranda v. Arizona*, 384 U.S. at 442, 444-45)). "[I]f the accused invoked his right to

10  counsel, courts may admit his responses to further questioning only on finding that he

11  (a) initiated further discussions with the police, and (b) knowingly and intelligently

12  waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984).1 This

13  "bright line rule" is "designed to prevent police from badgering a defendant into

14  waiving his previously asserted *Miranda* rights," and to "protect 'the suspect's desire to

15  deal with the police only through counsel.'" *Sessoms*, 776 F.3d at 622 (quoting

16  *Michigan v. Harvey*, 494 U.S. 344, 350 (1990) and *McNeil v. Wisconsin*, 501 U.S. 171,

17  178 (1991)).

18          Here, Mr. Harrell repeatedly told the agents that he wanted an attorney.  When

19  the agents begin to question him about the "website, do you know what that is?" and

20  ask him about names used by users of that website, Mr. Harrell says "But I do want to

21  get a lawyer." (Exhibit A at 7:23 to 7:42)  The agents persist, and Mr. Harrell

22  responds:  "I just want to get a lawyer.  I just want to get a lawyer."  Agent Squire

23  continues, "I'm not a lawyer, I can't help that."  (Exhibit A at 8:13 to 8:30) Agent

24  Squire says that he has concerns about other guys (users), to which Mr. Harrell says, "I

25  can.  I want to get a lawyer.  If that's okay?  I'm scared right now, I want to get a

26  lawyer."  (Exhibit A at 8:30 to 8:44)  The agents continue with the questioning, as if

27  they have not heard Mr. Harrell's repeated requests for a lawyer.  Under these

28

                                                7

circumstances, *Miranda* was violated, and Mr. Harrell's statements to the agents on May 28, 2017 should be suppressed.

## C.    MR. HARRELL'S STATEMENTS WERE NOT VOLUNTARY.

A statement is involuntary when police use coercive means to undermine the suspect's ability to exercise his free will. *See Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). The voluntariness of a statement thus turns upon the methods used by police to produce the statement. *Miller v. Fenton*, 474 U.S. 404, 116 (1985) ("the admissibility of a confession turns as much on whether the techniques for extracting the statements, as applied to this suspect, are compatible with a system that presumes innocence and assures that conviction will not be secured by inquisitorial means[,] as on whether the defendant's will was in fact overborne;" see *also Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991). "The ultimate test remains....Is the confession the product of an essentially free and unconstrained choice by its maker?....The line of distinction is one at which governing self-direction is lost, and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). It is the government's burden to prove, by a preponderance of the evidence, that the defendant's statements were voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

In determining whether the government has met its burden, the Court must carefully evaluate all of the circumstances of an interrogation to decide whether, under the totality of the circumstances, the statement was obtained in a manner compatible with constitutional requirements. *Miller*, 474 U.S. at 112. The Supreme Court has recognized that there are certain police practices which, by themselves, render statement involuntary, regardless of their impact on the accused. *Miller*, 474 U.S. at 109 (1985) ("certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause...") (emphasis

8

1  added).

2       In this case, the officers used several such offensive tactics to extract statements

3  from Mr. Harrell, including that any statements be given that day--"You can't help us

4  now if you want an attorney with you.  You know what I'm saying?"  (Exhibit A at

5  12:25 to 12:50)  Mr. Harrell repeatedly tells the agents that he is scared and that he

6  wants a lawyer.  The agents ignore these requests and continue to interrogate him.  For

7  these reasons, it cannot be said that any of Mr. Harrell's statements that day were

8  voluntary, and as such, they should be suppressed.

9  **III.**

10  **CONCLUSION**

11       For the reasons set forth here, any and all statements provided by Mr. Harrell to

12  investigating agents on the day of his arrest, May 28, 2017, should be suppressed.

13

14                   Respectfully submitted,

15                   HILARY POTASHNER
                    Federal Public Defender

16

17

18  DATED:  August 9, 2019        By  /s/ *Pedro V. Castillo*

19                   PEDRO V. CASTILLO
                    Deputy Federal Public Defender

20

21

22

23

24

25

26

27

28

9

# DECLARATION OF ARLAN WESLEY HARRELL

I, Arlan Wesley Harrell hereby declare:

1.     I am the defendant charged in this case.

2.     On the early morning of May 28, 2017, I was at home at my parent's house in Hawthorne, California. I was awakened by several agents who came into the home. They were armed with guns and entered the house. They took me outside and began to question me. I have never been arrested before, and I was scared. They read me my rights, but I did not understand them. I did not understand that I could refuse to talk to the agents, or that, if I asked for a lawyer, one would be provided for me immediately. I told the agents that I wanted a lawyer at the beginning of the questioning. The agents ignored my repeated requests for a lawyer. I again told the agents that I wanted a lawyer and that I was scared. They ignored my requests and persisted with questions. They told me that I should help them and that it would go a long way if I did. I told them again that I wanted a lawyer. They continued to ask questions. I answered their questions because I felt that I had no other option but to answer their questions, since they had ignored my repeated requests for a lawyer. I provided statements to the agents that day.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 9, 2019, at Santa Ana, California.

_____
ARLAN WESLEY HARRELL
Defendant

**EXHIBIT A**

**(FILED SEPARATELY UNDER SEAL)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

**(FILED SEPARATELY UNDER SEAL)**

1

## **PROOF OF SERVICE**

2       I, the undersigned**,** declare that I am a resident or employed in Los Angeles

3  County, California; that my business address is the Office of the Federal Public

4  Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No.

5  (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the

6  action entitled above; that I am employed by the Federal Public Defender for the

7  Central District of California, who is a member of the Bar of the State of California,

8  and at whose direction I served a copy of the attached **NOTICE OF MOTION;**

9  **MOTION TO SUPPRESS STATEMENTS; MEMORANDUM OF POINTS**

10  **AND AUTHORITIES; DECLARATION; EXHIBITS**

11       on the following individual(s) by:

12

| [] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [ ] Placing same in an envelope for hand delivery addressed as follows: | [ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows: | [ X ] By email as addressed below: |

13

14

15

16

17  **Devon Myers, AUSA**

18  **Devon.myers@usdoj.gov**

19

20       This proof of service is executed at Los Angeles, California, on August 9, 2019.

21       I declare under penalty of perjury that the foregoing is true and correct to the best

22  of my knowledge.

23

24                              */s/ Lorena Macias*
                               Lorena Macias

25

26

27

28

12